1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**
9                  **SOUTHERN DISTRICT OF CALIFORNIA**
10

11   VIOLA FRISON,                          CASE NO. 09cv1733-LAB (NLS)

12                         Plaintiff,       **ORDER GRANTING MOTION TO
                                            EXPUNGE NOTICE OF *LIS***
13          vs.                             ***PENDENS*; AND**

14                                          **ORDER DISMISSING
                                            COMPLAINT WITHOUT**
15   WMC MORTGAGE CORPORATION,              **PREJUDICE**
     et al.,
16                                          [Docket numbers 5, 6, 8.]

17                        Defendants.

18

19          This case concerns a threatened foreclosure on real property.  Plaintiff seeks

20   rescission of the deed of trust, an order forbidding foreclosure on the property, damages,

21   costs, and attorney's fees.  The complaint identifies claims under the Real Estate Settlement

22   Practices Act (RESPA), 12 U.S.C. §§ 2605 *et seq.*, and the Truth in Lending Act (TILA), 15

23   U.S.C. §§ 1601 *et seq.*, as well as various state claims for violation of Cal. Bus. & Prof. Code

24   § 17200, fraud, and negligent misrepresentation.[1]  Besides unknown or "Doe" Defendants,

25   the only two Defendants are WMC Mortgage Corporation and Saxon Mortgage Service, Inc.

26   _____

27          [1] The complaint also identifies rescission, determination of the validity of the lien,
     negligent misrepresentation, and quasi contract as causes of action, but these are not
28   actually claims.  The first three are remedies she seeks.  Quasi contract is a theory by which
     Plaintiff seeks to hold Saxon liable for  wrongdoing named in the other claims even if it is
     found to have no contract with Plaintiff.

1   On the same day the complaint was filed, Plaintiff filed a notice of *lis pendens*.
2   Defendants then each filed motions to dismiss or for a more definite statement, and
3   Defendant Saxon filed a motion to expunge the notice of *lis pendens*.   Although the
4   complaint originally contained a paragraph purporting to be a qualified written request
5   (QWR) under RESPA, the Court ordered it stricken.

6   **I.      The Complaint**

7   Plaintiff took out a refinancing loan on or about October 12, 2004, secured by real
8   property in San Diego County.  She alleges that all Defendants, along with an unidentified
9   broker, made misrepresentations during the loan process, caused her to enter into a loan
10  with different terms than she thought she was getting, and failed to provide her with required
11  disclosures.  The alleged misrepresentations concern the loan's interest rate, the amount
12  of payments, the amount of equity in the property, and the available loan proceeds.  Plaintiff
13  alleges that, as a result, the loan became unaffordable.  She argues the effect of all this was
14  to put her into a loan without her "informed consent."  She says she told WMC and Saxon
15  she wanted to rescind the loan (Complaint, ¶ 25), but doesn't allege when she did this.  She
16  apparently clarifies her allegations about Defendants' roles later, when she says WMC was
17  the original lender, and Saxon acquired the loan (or some unknown rights to the loan) from
18  WMC later, but that Saxon is still liable for misrepresentations.  (¶¶ 30–32.)

19  Plaintiff also made broad allegations of predatory lending practices.  (¶ 23.)  She
20  apparently mentions these as a way of showing purpose or knowledge, since most of them
21  apparently didn't affect her.  She alleges the forms she was provided with are too
22  complicated to understand.  (¶ 27.)  She also believes Defendants owed fiduciary duties to
23  her.  (¶ 29.)

24  As a result of the alleged misrepresentations and non-disclosures, Plaintiff believes
25  no one owns the loan, and no one has the right to foreclose.  (Complaint, ¶ 26.)  She also
26  alleges she has suffered financial harm, emotional distress, and medical expenses. (¶ 32.)
27  / / /
28  / / /

**A.    RESPA Claims**

As part of the RESPA claim section, the complaint alleges Defendants failed to respond to certain unspecified qualified written requests, and imposed a late fee without giving notice of loan transfer.  This section also alleges generalized wrongdoing.

**B.    TILA Claims**

This section begins with a tacit acknowledgment that the limitations period has run, but argues that because "[a]ll Defendants . . . fraudulently concealed facts upon which the existence of Plaintiff['s] claims is based," she is entitled to equitable tolling.

The only actual TILA claims are set forth in paragraph 46, and allege the interest rate was deceptively presented, the APR was not correctly calculated, and the required payments were not fully disclosed.  In Plaintiff's opinion, this "rendered the credit transaction null and void [and] invalidates Defendants' claimed interest" in the property.  (¶ 47.)

**C.    Section 17200 Claim**

This claim is generally based on allegations already made.  This section of the complaint alleges generally unfair lending, charging unlawful commissions and fees, and deceit.

**D.    Negligent Misrepresentation Claims**

This claim is pleaded in three parts, or "counts," against different Defendants.  It reiterates earlier allegations of misrepresentations, and also alleges Saxon misrepresented that it had the right to foreclose on the loan.  Plaintiff alleges monetary loss, medical expenses, and emotional distress.

**E.    Fraud**

This claim is also pleaded in three "counts," against different Defendants (including an unnamed broker).  Each count alleges misrepresentations generally, and argues Plaintiff suffered harm because she relied on these.  The allegations refer to "promises and representations" (¶ 72) referring, apparently, to representations alleged earlier in the complaint.  The only additional allegations of false promises or representations are an allegation that the loan yield was insufficient to pay off some of Plaintiff's debts (¶ 71), of

1   "secret intentions not to perform," (¶¶ 72, 74), and of Saxon's misrepresentation that it had
2   the right to foreclose.  (¶ 81.)  Plaintiff alleged she relied on Defendants' representations to
3   her, and as a result she suffered monetary harm, medical expenses, and emotional distress.
4   This section also contains allegations that Defendants were reputable, and thus Plaintiff was
5   justified in relying on what they told her.  (¶ 89.)

6   **II.      Motion to Expunge Notice of *Lis Pendens***

7        Although a notice of *lis pendens* is a creature of California state law, under 15 U.S.C.
8   § 1964 state law *lis pendens* provisions apply in federal court.  *Ramirez v. SCME Mortg.*
9   *Bankers, Inc.*, 2010 WL 2839476, at *5 (S.D.Cal., July 19, 2010).  Defendant Saxon asks
10  the Court, pursuant to Cal. Civ. Proc. Code §§ 405.31, 405.32, and 405.34, to expunge the
11  notice Plaintiff recorded on August 11, 2009.  The motion is supported by a request for
12  judicial notice of certain loan-related documents.

13       Under California law, a notice of *lis pendens* should be expunged if a plaintiff cannot
14  establish his complaint contains a real property claim.  *Kirkeby v. Superior Court*, 33 Cal.4th
15  642, 647 (2004).  "Unlike most other motions, . . . the burden is on the party opposing the
16  motion [to expunge] to show the existence of a real property claim.  *Id.* (citing Cal. Civ. Proc.
17  Code § 405.30).  In his opposition to the motion, Plaintiff argues she can establish this.

18       At the pleading stage, the Court undertakes a limited demurrer-like analysis focusing
19  on whether a viable property claim has been pleaded.  *Id.*  at 647–48.  For this purpose, a
20  real property claim is a cause of action "which would, if meritorious, affect . . . title to, or the
21  right to possession of, specific real property . . . ."  Cal. Civ. Proc. Code § 405.4.  The effect
22  is that the party recording the notice must make a showing that he is likely to prevail on the
23  merits.  *Amalgamated Bank v. Superior Court*, 149 Cal. App. 4th 1003, 1011 (Cal. App. 3
24  Dist. 2007).

25       Neither the complaint nor Plaintiff's opposition to the motion to expunge differentiate
26  between property claims for *lis pendens* purposes, and other claims.  Here, the only possible
27  property claims are those that seek rescission, seek to prevent the foreclosure sale, seek
28  to quiet title, or otherwise challenge the validity of Defendants' security interest in the

property.  Plaintiff's claims for monetary damages are not property claims within the meaning of these statutes.  The Court rejects Plaintiff's unsupported suggestions that any irregularity in the loan process would entitle her to prevail in a quiet title action.

Saxon requests $2,350 in attorney's fees, which Cal. Civ. Proc. Code § 405.38 says should be awarded unless the Court finds Plaintiff acted with substantial justification or that the imposition of fees and costs would be unjust.

### A.     Statute of Limitations

The loan agreement was entered into on or around October 12, 2004, and Plaintiff didn't file this action until August 10, 2009, nearly five years later. Saxon therefore argues that both the TILA and RESPA claims are time-barred.   Under 28 U.S.C. § 1635(f), rescission as a remedy under TILA becomes unavailable three years after consummation of the loan, when the consumer transfers all her interest in the property, or when the property is sold, whichever occurs first. *Meyer v. Ameriquest Mortg. Co.*, 342 F.3d 899, 900 (9th Cir. 2003) (citing 12 C.F.R. § 226.23(a)(3)). Equitable tolling is inapplicable; § 1635(f) completely extinguishes the right of rescission at the end of the 3-year period. *McCann v. Quality Loan Serv. Corp.*, ___ F. Supp. 2d ____, 2010 WL 3118313, at *4 (W.D. Wash., July 21, 2010) (citing *Beach v. Ocwen Fed'l Bank*, 523 U.S. 410, 412 (1998)).

In her opposition, Plaintiff hasn't attempted to explain why her TILA claim isn't time-barred. She did request expedited discovery and briefing but didn't explain how either would help her show her claims weren't time-barred.

Saxon argues RESPA is subject to two statutes of limitations, as provided under 12 U.S.C. § 2614:[2] a one-year limitations period for violation of §§ 2607 and 2608, and a three-year limitations period for violations of § 2605.  But these are beside the point here.  Plaintiff has raised a RESPA claim only under § 2605, and rescission is unavailable under this section. *Permpoon v. Wells Fargo Bank N.A.*, 2009 WL 3214321, at *11 (S.D.Cal., Sept. 29,

/ / /

---

[2] Saxon actually cites 26 U.S.C. § 2614 in both its motion to expunge and its motion to dismiss, but this must be a scribal error.

1  2009).  The RESPA claim therefore doesn't affect an interest in property and can't form the

2  basis for a notice of *lis pendens*.

3  **B.    Failure to Tender**

4      In *Yamamoto v. Bank of N.Y.*, 329 F.3d 1167, 1171 (9th Cir. 2003), the Ninth Circuit

5  held that district courts have discretion to condition rescission on tender of the loan

6  proceeds.  Relying on this and other precedents, courts in this circuit have required plaintiffs

7  seeking to challenge a pending foreclosure sale to first allege tender of the amount of the

8  secured indebtedness.  *Grant v. Aurora Loan Servs., Inc.*, ___ F. Supp. 2d ____, 2010 WL

9  3517399, at *7 (C.D.Cal., Sept. 10, 2010) (citing cases).  In other words, a plaintiff must

10  plead that she has paid amount of indebtedness or at least is prepared to pay it if rescission

11  is granted.  *Id.* at *8 (holding challenge to foreclosure sale barred by tender rule, where

12  plaintiff could at most offer to enter into a short sale agreement with defendant).

13      The "tender rule," as it is sometimes called, is designed to  prevent courts from

14  granting rescission only to find out a plaintiff's inability to tender the loan proceeds rendered

15  the award meaningless.  *Garza v. American Home Mortg.*, 2009 WL 188604, at *5 (E.D.Cal.,

16  Jan. 27, 2009).  While several courts have held application of this rule is discretionary, *see,*

17  *e.g., De Valle v. Mortg. Bank of Cal.*, 2010 WL 1813505, at *9 (E.D.Cal., May 5, 2010), the

18  Court believes it should be applied here.   The application of this rule is particularly

19  appropriate where, as here, a defendant has raised the issue, and where the pleadings

20  suggest the default is due to the plaintiff's inability to pay.  (*See* Compl., ¶ 71 (alleging the

21  loan proceeds "did not pay off [unspecified debts] as Defendants promised [they] would

22  do").)

23      Saxon points out Plaintiff has not alleged tender of the loan proceeds, or the ability

24  to do so.  In her opposition, Plaintiff has made no response other than the request for

25  additional briefing and discovery, as noted above.  Neither discovery nor additional briefing

26  would make any difference here.

27  / / /

28  / / /

1

## C.    Failure to Plead Fraud Adequately

2       Saxon argues the complaint has not adequately pleaded fraud as required under Fed.

3  R. Civ. P. 9(b), and the Court agrees.  The complaint says the Defendants, along with an

4  unidentified broker, conspired together to make misrepresentations to Plaintiff and to induce

5  her to rely on them.  It doesn't plead facts in chronological order, so it isn't completely clear

6  when the various alleged misrepresentations were made.[3]  Paragraphs 15 through 17, 46,

7  and 67 through 74 make generalized references to misrepresentations concerning interest

8  rates, amount of payments, the amount of equity in the property, available loan proceeds,

9  and fees and other compensation to Defendants.  These paragraphs do little more than

10  identify the subjects of the alleged misrepresentations, and recite the elements of a fraud

11  claim.  This is insufficient even under the ordinarily pleading standard, *Ashcroft v. Iqbal*, 129

12  S.Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action,

13  supported by mere conclusory statements, do not suffice."), much less under the heightened

14  Rule 9(b) standard.  Other paragraphs in the complaint refer to misrepresentations, but these

15  are alleged misrepresentations of the right to foreclose, and are unsupported by any

16  allegations showing why they would constitute fraud, or why they would support rescission

17  or a quiet title claim.  (Compl. ¶¶ 26, 81.)

18       In reply, Plaintiff merely points to the arguments set forth in her opposition to Saxon's

19  motion to dismiss.  (P.'s Opp'n to Mot. to Expunge, 2:23–24.)  This section asserts that

20  Plaintiff, by identifying the topics of the alleged misrepresentations, the entities involved, the

21  locations of the various parties, and the approximate time period, has adequately pleaded

22  facts.  She argues she is not required to identify individual employees by name.  The Court

23  disagrees.  The complaint leaves out the main relevant details of what was allegedly

24  represented to Plaintiff, who made the representation, how it was represented, what the truth

25  was, and how it was concealed from Plaintiff.  These are all things Plaintiff should be able

26  to allege clearly and in some detail.  Plaintiff never says what anybody told her about the

27

28       [3] The time frame is important here, because it is obvious some alleged misrepresentations occurred after the loan was entered into, and wouldn't warrant rescission.

interest rate, the loan proceeds, the fees, or any other charges; whether the misrepresentations were express or implied; whether the misrepresentations were spoken to her, communicated in writing, or conveyed in some other way; when and under what circumstances each of the allegedly fraudulent communications were made to her; how it was that Defendants prevented her from discovering the truth; or what the actual interest rate or amounts of money were.  These are the types of things a defrauded plaintiff would be expected to know, or at least be able to find out readily.  Without these details, it would be difficult or impossible for Defendants to know what communications of theirs Plaintiff was referring to, what she thinks they said, why they were material, and why it might constitute fraud.

The allegations are also unacceptable because they are almost entirely conclusory, and the conclusions are unsupported by factual context.  Even under the general pleading standard this is insufficient, *Iqbal*, 129 S.Ct. at 1954 (explaining that courts are not required "to credit a complaint's conclusory statements without reference to its factual context"), and it is particularly so under the heightened Rule 9(b) standard.  It is not for Plaintiff to conclude that misrepresentations about interest rates, fees, loan proceeds, or the like were material without providing any figures at all.  It is not for Plaintiff to conclude she was induced to believe misrepresentations with no explanation of any kind of how the communications were made or how it was she was deceived.  By way of example, the first page of the deed of trust signed by Plaintiff says the loan proceeds were $262,500.[4]  It is therefore wholly unclear how it is she was deceived into thinking the proceeds would be some other amount.

Although the motion to expunge directly challenged the adequacy of Plaintiff's fraud allegations, she didn't attempt to show she could plead details with any greater particularity.  It may be that Plaintiff can ultimately save this claim by amending to plead more specifically.  But in opposing a motion to expunge a notice of *lis pendens*, the plaintiff bears the burden

---

[4] This document is attached as Exhibit 1 to Saxon's Request for Judicial Notice in Support of its Motion to Dismiss.  While Plaintiff doesn't oppose the request, the Court need not take notice of the deed of trust at this time, but merely cites it for purposes of using its language as an example of the types of matters the complaint's allegations should have addressed.

09cv1733

of showing the existence of a valid real property claim. *Kirkeby*, 33 Cal.4th at 647.  Allowing a notice of *lis pendens* to remain on record after a plaintiff has failed to meet her burden, merely because she might be able to succeed in the end, would encourage sandbagging by plaintiffs.  *See, e.g., California-Hawaii Development, Inc. v. Superior Court*, 102 Cal. App. 3d 293, 300 (Cal. App. 1 Dist. 1980) (noting incentive of party filing notice of *lis pendens* to cause delay, particularly if that party's arguments were non-meritorious); *Amalgamated Bank*, 149 Cal. App. 4th at 1012 and n.14 (outlining history of legislative reform of *lis pendens* and policy reasons for making them easier to expunge).

### D.  Other Arguments

While Saxon has raised other arguments, the Court need not consider these arguments when ruling on this motion because it is clear the notice must be expunged. Saxon also raised these arguments in its motion to dismiss and they will be considered for that purpose.  Judicial notice of the loan-related documents is also unnecessary in deciding this motion.

While the Court may order discovery for any party affected by a motion to expunge or may hold an evidentiary hearing, Cal. Civ. Proc. Code § 405.30, Plaintiff has not explained why either would be appropriate here.  The Court's decision on this motion is based on the motion and opposition.

### E.  Attorney's Fees

Except for the TILA and fraud claims, Plaintiff has not adequately shown that any of her claims, if meritorious, might affect the title to or right to possession of real property.  In response to Saxon's motion to expunge, Plaintiff failed to show any reason why the TILA claim is not time-barred, or why she had adequately pleaded (or could adequately plead) fraud.  Except for her arguments that her claims were valid, Plaintiff didn't directly address the request for attorney's fees.

While it is clear Plaintiff's TILA claim for rescission was brought without substantial justification, it is unclear at this point what Plaintiff is alleging with regard to fraud, and whether she will ultimately be able to save her claim by amendment.  Attorney's fees will

1   therefore be denied at this time, but Saxon may renew its request if Plaintiff's fraud claim is

2   ultimately dismissed.

3   **III.    Motions to Dismiss**

4         A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint. *Navarro v.*

5   *Block*, 250 F.3d 729, 732 (9th Cir.2001).  In ruling on a motion to dismiss, the Court accepts

6   all allegations of material fact in the complaint as true and construes them in the light most

7   favorable to the non-moving party. *Cedars-Sinai Medical Center v. National League of*

8   *Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007). While the scope of review on a

9   motion to dismiss for failure to state a claim is ordinarily limited to the contents of the

10  complaint as well as any "documents whose contents are alleged in a complaint and whose

11  authenticity no party questions, but which are not physically attached to the pleading, may

12  be considered in ruling on a Rule 12(b)(6) motion to dismiss." *Branch v. Tunnell*, 14 F.3d

13  449, 454 (9th Cir.1994) *overruled on other grounds by Galbraith v. County of Santa Clara*,

14  307 F.3d 1119 (9th Cir. 2002). The court may treat such a document as "part of the

15  complaint, and thus may assume that its contents are true for purposes of a motion to

16  dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

17        Both sides cite *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957) as setting forth the

18  standard for dismissal under Fed. R. Civ. P. 12(b)(6).   Under *Conley*, dismissal was

19  appropriate only where "it appears beyond doubt that the plaintiff can prove no set of facts

20  in support of his claim which would entitle him to relief."  But *Conley*'s holding is no longer

21  good law, having been expressly rejected by the Supreme Court in *Bell Atlantic v. Twombly*,

22  550 U.S. 544, 560–63 (2007).  Under *Twombly*, a complaint must "give the defendant fair

23  notice of what the . . . claim is and the grounds upon which it rests" and its factual allegations

24  must  "raise the right to relief above a speculative level."  *Id.* at 555.

25        **A.    Saxon's Motion to Dismiss**

26        Saxon raises most of the same arguments in its motion to dismiss as in its motion to

27  expunge.  The motion to dismiss includes factual representations, supported by documents

28  Saxon asks the Court to notice.  Saxon represents that it was not the original loan servicer

1  and points out Plaintiff has admitted this.  Saxon therefore argues that the claims do not

2  apply to it.  Saxon also represents that WMC was the original lender but that Deutsche Bank,

3  which is not a named Defendant, is the current beneficiary under the deed of trust.

### 1.  Statutes of Limitations

5  Saxon raises the same statutes of limitations defenses as in its motion to expunge.

6  As discussed above, Plaintiff's TILA claim for rescission is time-barred.  Her other TILA

7  claims, for money damages, are subject to a 1-year statute of limitations, 15 U.S.C.

8  §1640(e), and her RESPA § 2605 claims are subject to a 3-year statute of limitations from

9  the date the alleged violation occurred.  12 U.S.C. § 2614.

10  TILA's one-year limitations period has run unless tolling applies.  Plaintiff argues

11  TILA's one-year limitations period for damages may be equitably tolled, *Pelayo v. Home*

12  *Capital Funding*, 2009 WL 1459419, at *5 (S.D.Cal., May 22, 2009), and says it should be

13  tolled here because Defendants prevented her from discovering her cause of action.  She

14  alleges Defendants "delivered multiple disclosures to Plaintiff which were misleading,

15  deceptive, inconsistent, incorrect, and not reasonably comprehensible by a consumer."

16  (Opp'n to Saxon's Mot. to Dismiss, 8:7–8.)  These generalized allegations are insufficient to

17  show that tolling applies, but by the same token it is not absolutely certain at this point

18  Plaintiff could not qualify for tolling.

19  Saxon argues Plaintiff has conceded her claim was filed beyond the three-year

20  RESPA limitations period.  Plaintiff disagrees, pointing out she served a qualified written

21  request on March 4, 2009 and again on July 27, 2009.  She attaches exhibits showing these

22  requests were sent to Saxon.  This is sufficient to withstand the statute of limitations defense

23  for these two claims.  But the specifics of these two requests must be mentioned in the

24  complaint itself, so Plaintiff will be required to amend her complaint to include this

25  information.

### 4.  RESPA Liability for Assignees

27  Saxon cites *In re Murray*, 239 B.R. 728, 736 (Bkrtcy. E.D.Pa. 1999) for the principle

28  that RESPA does not cover assignees.  *Murray* does not stand for such a broad proposition,

however, holding instead that RESPA's definition of "lender" does not include a subsequent assignee not named in the document creating the loan.  *Id*.  But other portions of RESPA apply to non-lenders, including § 2605(e), which requires servicers to respond to qualified written requests from borrowers or their agents.  Sections (a) through (e) of his same section contemplates transference of loan servicing.  *See also* § 2605(i)(2) (defining "servicer").

### 3.    Damages in Tort

Saxon next cites *Foley v. Interactive Data Corp.*, 47 Cal.3d 654 (1988), for the principle that, because Plaintiff's relationships and interactions with Defendants are fundamentally contractual, tort damages (*e.g.*, for emotional distress) are unavailable. Plaintiff does not address this argument, so the Court takes this point as conceded.

### 4.    Holder in Due Course

Saxon raises the defense that it is a holder in due course, and therefore under Cal. U.C.C. § 3305 Deutsche Bank took the loan free and clear of defenses and claims by Plaintiff.  This defense is, however, fact-based, requiring a finding that Deutsche Bank took the loan for value, in good faith, and without notice of any defense or claim.  Cal. U.C.C. § 3302.  The documents Saxon asks the Court to take notice of would not suffice to establish this defense.  Because the Court does not consider facts outside the pleadings at this stage, this defense cannot support dismissal of any claims.

### 5.    Tender Rule

Saxon again raises the tender rule as a defense to claims for rescission and to quiet title, and Plaintiff again argues tender is not required.  For reasons set forth in the Court's analysis above, all claims attempting to challenge the threatened foreclosure sale will be dismissed unless Plaintiff can in good faith allege willingness and ability to tender the loan proceeds.  Should she so allege, evidence of her willingness and ability may later be required.

### 6.    Failure to Allege Fraud with Particularity

Saxon raises the same arguments against Plaintiff's fraud claims as it raised in its motion to expunge, and Plaintiff's response is obviously the same as well.  For reasons set

1  forth above, the Court finds Plaintiff has not adequately pleaded fraud, though it is unclear

2  whether she could amend her complaint to cure this defect.

3                    **7.      Request for Judicial Notice**

4          Because the Court need not at this time judicially notice the documents submitted in

5  support of Saxon's motion to dismiss, the request for judicial notice is moot.

6         **B.      Saxon's Alternative Request to Strike**

7          In the alternative, Saxon as part of this same motion has asked the Court to strike

8  Plaintiff's request for punitive damages.  Because Plaintiff will be given an opportunity to

9  amend her complaint, the Court assumes she will consider these arguments and plead

10 accordingly.  For now, this request will be denied as unripe.

11        **C.      WMC's Motion to Dismiss**

12         WMC raises many of the same arguments as Saxon has raised, though some

13 arguments are unique to WMC's motion.  For most of the arguments also raised by Saxon,

14 the analysis is obviously the same.

15                   **1.      Inadequacy of Allegations**

16         In addition to pointing out the generalized nature of the fraud allegations, WMC notes

17 that an unidentified broker is identified as a participant.  WMC contends that an independent

18 mortgage broker is a borrower's agent, citing *Wyatt v. Union Mortg. Co.* 24 Cal.3d 773, 782

19 (1979), and that WMC is therefore not liable for any misstatements by the broker.  While the

20 complaint alleges the broker and all Defendants acted as each other's agents, agency is a

21 legal conclusion.  The only allegations supporting this conclusion are that all Defendants

22 conspired together and worked in concert.  As factual allegations, these are deficient.  *Cf.*

23 *Iqbal*, 129 S.Ct. at 1950 (analyzing allegations of conspiracy and parallel conduct as set forth

24 in *Twombly*, and concluding that generalized allegations did not "nudge" the plaintiff's claims

25 "across the line from conceivable to plausible") (citing *Twombly*, 550 U.S. at 551, 555,

26 565–56, 567, 570).

27         The Court agrees that Plaintiff must plead facts to show whose agent the broker was,

28 and who misled or made misrepresentations to Plaintiff.  At present, the complaint leaves

open the possibility that someone other than Defendants was responsible for most of the harm to Plaintiff.  In other words, most of the complaint amounts to little more than claims that Defendants might or might not be liable to her.  Plaintiff knows, or should know, whom she talked with and met with, and who sent letters or other papers to her.  She has made a general request for early discovery, but has not explained what she is seeking or why she needs it in order to plead her claims adequately.

## 2.    RESPA Claims

As discussed above, the only claims Plaintiff has pleaded with any particularity, or shown she could so plead, are RESPA claims for failure to respond to qualified written requests.  WMC argues that, as the original lender, it is not responsible for replying to qualified written requests.  In her opposition, Plaintiff argues WMC may in fact have been the servicer.  The problem with this argument is that Plaintiff has never alleged sending WMC any qualified written requests, much less any details about these requests.  *See Delino v. Platinum Cmty. Bank*, 628 F. Supp. 2d 1226, 1231–32 (S.D.Cal. 2009) (concluding plaintiff failed to state a claim under RESPA, where she failed to allege to whom specifically plaintiff made QWRs, when plaintiff made such requests, how defendants failed to respond to such requests, if the 60-day statutory period for response had lapsed, and how defendant met the statutory definition of a "servicer"). The qualified written requests Plaintiff has submitted are all addressed to Saxon.  Plaintiff alleges the complaint itself serves as an additional qualified written request but, as noted, the purported qualified written request was stricken from the complaint.  And even assuming the complaint could contain an adequate qualified written request,[5] Plaintiff obviously couldn't truthfully allege Defendants had failed

---

[5] The Court rejected Plaintiff's argument that she could permissibly include a qualified written request within the complaint, and that such a request would be adequate.  RESPA provides that a QWR consists of "a written correspondence" that satisfies certain conditions. 12 U.S.C. § 2605(e)(1)(B).  Pleadings are not conversations between the parties; rather, they are addressed to the Court.  Plaintiffs in this District and elsewhere have attempted to include requests in their complaints as a means of making QWRs, and all efforts have been rejected. *See, e.g., Delino*, 628 F. Supp. 2d 1226; *Wenglicki v. Tribeca Lending Corp*., 2009 WL 1364430 WL 2195221 (E.D.Pa., July 22, 2009), *Walker v. Equity 1 Lenders Group*, (S.D.Cal., May 14, 2009), *Andrew v. Ivanhoe Financial, Inc*., 2008 WL 2265287 (E.D.Pa., May 30, 2008).

1   to make timely response to it.  *See Rivas v. New Century Mortg. Corp.*, 2010 WL 330225,

2   at *3 (S.D.Cal., Jan. 20, 2010) ("[E]ven if a complaint can constitute a qualified written

3   request, Plaintiff cannot plausibly allege that [a defendant] failed to respond to her qualified

4   written request in the same document that contains the alleged qualified written request.")

5       Plaintiff has therefore failed to adequately plead any RESPA claims against WMC.

6             **3.   Cal. Bus. & Prof. Code § 17200 Claim**

7       This statute "'borrows' violations of other laws and treats them as unlawful practices,"

8   making them independently actionable.  *Cel-Tech Communications, Inc. v. Los Angeles*

9   *Cellular Tel. Co.*, 20 Cal.4th 163,180 (1999).  It covers "anything that can properly be called

10   a business practice and that at the same time is forbidden by law." *Id*. (quoting *Rubin v.*

11   *Green*, 4 Cal.4th 1187, 1200 (1993)) (further citations omitted).  In some cases, this requires

12   a showing that a defendant has violated some statutory, regulatory, or constitutional

13   requirement.  But there is some authority for the proposition that more general unfairness

14   may satisfy this requirement in consumer actions, *see Kilgore v. KeyBank*, ___ F. Supp. 2d

15   ___, 2010 WL 1461577, at *8 (N.D.Cal., Apr. 12, 2010), though it is unclear whether this

16   would qualify as a consumer action.

17       In any case, a § 17200 claim rises or falls with the underlying claims of wrongdoing.

18   Because Plaintiff has not sufficiently alleged wrongdoing by Defendants, this claim must be

19   dismissed as well.

20             **4.   Negligent Misrepresentation**

21       WMC characterizes the negligent misrepresentation claim as being based on a

22   fiduciary duty.  Citing *Nymark v. Heart Fed'l Savings & Loan Ass'n*, 231 Cal. App. 3d 1089,

23   1095–96 (Cal. App. 3 Dist. 1991), argues that as a lender it owed Plaintiff no fiduciary duties.

24   Plaintiff's opposition doesn't address this argument, but instead focuses on the adequacy

25   of the pleading.  As discussed, none of the claims for misrepresentation or fraud are specific

26   or clear enough to withstand a motion to dismiss.

27   / / /

28   / / /

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 5. Quasi-Contract

Although the complaint says the quasi-contract claim is brought against all Defendants, WMC points out the allegations actually only attempt to bring claims against Saxon. In her opposition, Plaintiff recharacterizes this as an unjust enrichment claim. Unjust enrichment, however, is a principle of restitution underlying other claims, not a separate cause of action. *Jogani v. Superior Court*, 165 Cal. App. 4th 901, 911 (Cal. App. 2 Dist. 2008). In other words, Plaintiff appears to be arguing that Defendants were required to make restitution to her, and failed to do so. This claim is therefore derivative of other claims. Because they are inadequately pleaded, so is this claim.

### 6. Tender Rule

In arguing for dismissal of Plaintiff's claim for determination of the validity of the lien, WMC raises the tender rule, and the analysis is essentially the same.

### D. Plaintiff's Request for Judicial Notice

In her opposition, Plaintiff has asked the Court to take judicial notice of two documents, a statement of charges against WMC issued by the State of Washington Department of Financial Institutions Division of Consumer Affairs, and a calendar for the month of October, 2004. The request for judicial notice doesn't explain why Plaintiff believes the Court can and should take notice of them.

The Court can take notice of facts not subject to reasonable disputes, such as dates, if necessary, but it is unclear why the Court should take notice of dates in the month of October, 2004. Plaintiff has not shown why the statement of charges would be relevant.

### IV. Conclusion and Order

### A. Notice of *Lis Pendens*

Plaintiff's claim for rescission under TILA is apparently time-barred. Her claim for fraud is inadequately pleaded and she has not shown that she could amend it if given the opportunity. It does not appear any other claim or theory of recovery in the complaint would constitute a property claim. Plaintiff has therefore not met her burden of showing the existence of any real property claims. It is **ORDERED** that Plaintiff's Notice of Pendency of

Action, recorded as Document No. 2009-0448882, on August 11, 2009, in the San Diego County Recorder's Office, against the real property located at 440 Kingwood Drive, San Diego, California 92114 is **EXPUNGED**. The request for attorney's fees is **DENIED WITHOUT PREJUDICE**.

### B. Motions to Dismiss

The complaint fails to state a claim. The request for rescission under TILA is **DISMISSED WITHOUT LEAVE TO AMEND,** because her right to rescind under this statute is time-barred and tolling does not apply. In other respects, the complaint is **DISMISSED WITHOUT PREJUDICE**. If Plaintiff wishes to file an amended complaint to remedy the defects identified in this order, she may do so no later than **28 calendar days from the date this order is issued**. If Plaintiff includes claims identified in this order as apparently time-barred, she must plead facts to show why tolling applies. If she seeks to challenge the pending foreclosure sale, or to quiet title, or if she seeks rescission under any theory other than TILA, she must comply with the tender rule by pleading either that she has made tender or is prepared to make tender should the relief she seeks be granted.

The request to strike is **DENIED** as unripe. All requests for judicial notice are **DENIED**, and requests for a more definite statement are **DENIED** as moot.

**IT IS SO ORDERED**.

DATED:  September 29, 2010

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge