# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIOLA FRISON,<br><br>　　　　Plaintiff,<br>　vs.<br><br>WMC MORTGAGE CORPORATION, et al.,<br><br>　　　　Defendants. | CASE NO. 09cv1733-LAB (NLS)<br><br>**ORDER GRANTING MOTIONS TO DISMISS** |

　　　This case concerns Plaintiff Viola Frison who has defaulted on her mortgage, and the subsequent attempt by the lender to foreclose on Frison's real property that serves as security for that mortgage.  After dismissal of the original complaint, Frison filed her First Amended Complaint (FAC).  The FAC seeks for the loan to be forgiven, damages, costs, and attorney's fees.  The FAC identifies eight causes of action against claims, including: (1) Violation of the Real Estate Settlement Practices Act (RESPA), 12 U.S.C. §§ 2605 *et seq.,* against Defendant Saxon Mortgage Services ("Saxon")*;*  (2) Violation of the Truth in Lending Act (TILA), 15 U.S.C. §§ 1601 *et seq.* against Defendants Deutsche Bank National Trust Company ("Deutsche Bank"), WMC Mortgage, LLC ("WMC") and Saxon; and various state claims for violation of Cal. Bus. & Prof. Code § 17200, fraud, and negligent misrepresentation.

The FAC also identifies remedies such as rescission and determination of the validity of the lien as causes of action. Quasi contract is also identified as a cause of action, although in fact it is a theory by which Frison seeks to hold Saxon liable for wrongdoing named in the other claims even if it is found to have no contract with Frison.

## I.   Legal Standard

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir.2001). In ruling on a motion to dismiss, the Court accepts all allegations of material fact in the complaint as true and construes them in the light most favorable to the non-moving party. *Cedars-Sinai Medical Center v. National League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007). While the scope of review on a motion to dismiss for failure to state a claim is ordinarily limited to the contents of the complaint as well as any "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir.1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). The court may treat such a document as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

Frison in her opposition to the motions to dismiss again cites the old standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957), under which a Rule 12(b)(6) dismissal was appropriate only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." But as the Court has pointed out (*see* Docket no. 19 at 10:17–24), the Supreme Court expressly repudiated that standard in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), holding that a complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" and its factual allegations must "raise the right to relief above a speculative level." *Id.* at 555. The complaint must contain enough factual allegations that, if accepted as true, would state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1939, 1949 (2009).

## II.     Discussion

Defendants raise a number of arguments and defenses, but the Court need not reach them all, because it is clear the FAC must be dismissed. Much of the Court's reasoning here mirrors its reasoning in the order dismissing the original complaint, Docket no. 19, reported at *Frison v. WMC Mortg. Corp.*, 2010 WL 3894980 (S.D.Cal., Sept. 30, 2010).

The FAC identifies federal question jurisdiction and supplemental jurisdiction as the two jurisdictional bases. The FAC points out the TILA and RESPA claims are federal claims, and argues that the Court should also exercise supplemental jurisdiction over the remaining state law claims.

### A.     TILA Claims and Statute of Limitations

The loan agreement was executed October 12, 2004, and Frison didn't file this action until August 10, 2009, nearly five years later. Frison was put on notice that the limitations period under TILA was at issue by the Court's order dismissing her original complaint. Defendants again argue that the TILA claim is time-barred. Frison does not dispute that, absent tolling, the limitations period has run. For TILA damages claims, the one-year limitations period may be suspended "until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA action." *King*, 784 F.2d at 915.

Frison's TILA claims are are based on alleged failure to provide disclosures at the time of the loan's origination (FAC, ¶¶ 54–62.) Frison specifically cites certain disclosures that must be made (*id.*, ¶ 57), though the pleadings show she is claiming only for a few failures to disclose. (*Id.*, ¶¶ 58–59.)

Under Fed. R. Civ. P. 12(b)(6), claims may be dismissed where the running of the statute of limitations is apparent on the face of the complaint. *Cervantes v. Countrywide Home Loans, Inc.*, ___ F.3d ___, 2011 WL 3911031, slip op. at *8 (9th Cir. Sept. 7, 2011). If the running of the limitations period appears on the face of the complaint, the Court considers whether the complaint, construed with the required liberality, would support a

///

determination of tolling. *Id*. The standard for construction of pleadings is set forth in *Twombly* and *Iqbal*.

In *Cervantes*, for example, the panel first determined the running of the limitations period was "apparent on the face of the complaint because the plaintiffs obtained their loans in 2006, but commenced their action in 2009." 2011 WL 3911031, slip op. at *8. The panel then considered whether the plaintiffs had "demonstrated a basis for equitable tolling of their claims." *Id*.

The Court follows this same line of inquiry. Because the running of the limitations period is apparent on the face of the complaint, the Court asks whether Frison has adequately alleged facts that would show tolling is available.

The FAC's allegations in support of tolling are sparse, and are contained in ¶¶ 38, 55, and 75. Paragraphs 55 and 75 are blanket allegations that "[a]ll defendants have concealed facts upon which the existence of Plaintiff's claims is based . . . ." (though paragraph 75 adds further alleges they were "fraudulently concealed"). These conclusory allegations are inadequate to support tolling.

Paragraph 38, the most detailed of the three, alleges generally that WMC and Oceanfront misled her into entering into an unfavorable agreement. But the factual allegations mention only the actions of Daniel Pate, acting as agent for Oceanfront (which has already been dismissed as a party). Pate, the FAC alleges, rushed Frison through the signing and failed to point out important terms. This paragraph mentions several omissions in the paperwork she was given (omission of date contract signed, date of right to rescind, and outline of distribution of loan proceeds). The FAC also alleges contradictions between different documents (interest rate of 7.990% on the Note, but 8.390% on the TILA disclosure). Moreover, this paragraph makes clear that even with the omissions, Plaintiff was given copies of the documents. It mentions no facts to explain why she waited so long to sue. Nor does it allege when she discovered the nondisclosures, although obviously she did so at some point before filing suit.

/ / /

Frison's oppositions to the motions to dismiss likewise do not identify any facts that would support tolling. They instead rely primarily on legal arguments suggesting that tolling should be readily available until a borrower actually discovers the nondisclosure, which is incorrect.

To the extent the nondisclosures would give rise to TILA claims, Frison had notice of the nondisclosures at the time, either at the signing or shortly thereafter, when she began making payments on the note.  The fact that she did not actually discover gaps, omissions, or contradictions in the paperwork, or did not realize their significance, is not controlling; the limitations period runs from the time Frison reasonably could have discovered the nondisclosures. *King*, 784 F.2d at 915; *Hubbard v. Fidelity Fed'l Bank*, 91 F.3d 75, 79 (9th Cir. 1996) (per curiam) (declining to toll TILA's statute of limitations when "nothing prevented [the borrower] from comparing the loan contract, [the lender's] initial disclosures, and TILA's statutory and regulatory requirements").

The FAC also alleges Saxon's failure to respond to qualified written requests, and suggests that this prevented Frison from discovering the nondisclosures.  But the alleged qualified written requests were not sent until 2009, well after the statute of limitations had run.

Because it is clear the statute of limitations has run on Frison's TILA claims, and because Frison was previously warned about failure to show why the statute of limitations should be tolled (Docket no. 19 at 5:18–20), the TILA claims will be dismissed with prejudice.

**B.**     **RESPA Claims - Qualified Written Requests**

The FAC identifies two communications as being qualified written requests (the "QWRs" collectively, and "QWR 1" and "QWR 2," respectively), alleging Frison sent both to Saxon:  QWR 1 on April 21, 2009 and QWR 2 on July 27, 2009.  The FAC alleges Saxon didn't respond within the statutory time period.  The Court's earlier order of dismissal pointed out that "the specifics of [the] two requests must be mentioned in the complaint . . . ."  The FAC does not adequately do this.  Frison submitted the two QWRs as exhibits in support of her opposition to Saxon's earlier motion to dismiss.  QWR 1 is attached as Exhibit B to

Docket no. 9-1, while QWR 2 is attached as Exhibit C to the same document. The two are similar and consist of a letter suggesting loan modification, and requesting voluminous production of information. QWR1 offers to drop the request for information if the loan is modified. QWR 2 is a follow-up letter repeating the request and using a form in which every category of document and information is requested.

The FAC alleges that both QWRs reference a "dispute" but doesn't say what the dispute was. Looking at both QWRs, it is still not clear what the dispute was. The letters merely attempt to engage Saxon in discussions about loan modification and request a great deal of information for review. Significantly, QWR 1 suggests that if Saxon quickly agrees to loan modification, Frison wouldn't need responses. (*See* Docket no. 9-1 at 17 ("If we are able to promptly resolve this matter, there may be no need for you to respond fully to the Qualified Written Request transmitted in this letter.").)

Saxon correctly points out the FAC doesn't allege facts sufficient to show that QWR 1 and QWR 2 were in fact qualified written requests, even after having been warned in the Court's previous order of dismissal. Having reviewed them, it is still unclear to the Court why they would actually be qualified written requests, rather than merely requests to negotiate about loan modification. Nor has she alleged facts showing how she was harmed by the failure to respond.

The FAC alleges that each of the QWRs requested 27 pieces or types of information. Hardly any of these appear relevant to any type of dispute Frison might have wanted to raise, and it is unclear how most of them pertain to the servicing of the loan. *See* § 2605(e)(1)(A) (qualified written request asks "for information relating to the servicing of [a] loan"). For example, it is difficult to imagine why Frison would need copies of HUD forms, escrow instructions, personal contact information for all "owners," and a loan modification package in order to dispute anything she has mentioned in the pleadings at any point. Nor is it clear how this would amount to information about the servicing of her loan. Some of it appears to be the type of information Frison already knew or had, or could have known by looking at her loan documents or statements (*e.g.*, the type of loan, the total amount she

borrowed, her present payment, copies of all loan applications, and all TILA disclosures). Some of the requests more closely resemble requests for admissions (*e.g.*, "Confirm that you will not seek a deficiency in the event of foreclosure of this loan;" "Confirm that this loan was characterized as a sub-prime loan," etc.)

Under § 2605(e)(1)(B)(ii), a qualified written request must "include[] a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower."  Both QWRs fail to do this, and therefore do not appear to be genuine qualified written requests even though they are labeled as such.

The FAC conclusorily alleges Frison suffered damages as a result of the failures to respond, including fees and charges by Saxon, harm to her credit rating, legal fees and costs, emotional distress, and missed work.  But it does not allege how the failure to respond to the QWRs caused any of these things.  A claim under RESPA for failure to respond to QWRs requires a showing that the violation proximately caused the plaintiff's damages. *Hernandez v. Calif. Reconveyance Co.*, 2010 WL 1911244, slip op. at *3 (S.D.Cal., May 10, 2010). Conclusory and speculative allegations about the effects of failure to respond to a QWR's "laundry list" of requests for information are insufficient. *Id.*; *see also Esoimeme v. Wells Fargo Bank*, 2011 WL 3875881, slip op. at *14 (E.D.Cal., Sept. 1, 2011) (where plaintiff did not allege a specific inquiry constituting a qualified written request, and did not allege pecuniary loss from alleged failure to respond, claim was insufficient and subject to dismissal).

Because Frison has not successfully amended her complaint even after the defects concerning qualified written request allegations were pointed out, because she has not alleged harm as a result of the failure to respond to the QWRs, and because the QWRs do not appear to be qualified written requests, the RESPA claims will be dismissed with prejudice.

/ / /

/ / /

### C. Supplemental Jurisdiction

Because the two federal claims are being dismissed, the Court will decline to exercise supplemental jurisdiction over the remaining state law claims, and they will be dismissed without prejudice. *See* 28 U.S.C. § 1367(c)(3) (district courts may decline to exercise supplemental jurisdiction over a claim if "the district court has dismissed all claims over which it has original jurisdiction"); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("[I]if the federal claims are dismissed before trial . . . the state claims should be dismissed as well.").

## III. Conclusion and Order

For the reasons set forth above, Frison's TILA and RESPA claims are **DISMISSED WITH PREJUDICE**. The remaining claims are **DISMISSED WITHOUT PREJUDICE BUT WITHOUT LEAVE TO AMEND**. The complaint in its entirety is **DISMISSED WITHOUT LEAVE TO AMEND**. Other requests are **DENIED AS MOOT** and all pending dates are **VACATED**.

**IT IS SO ORDERED**.

DATED: September 29, 2011

*[signature]*

**HONORABLE LARRY ALAN BURNS**
United States District Judge